Smith *vs.* Coker.

65   461
103  454

## SMITH *vs.* COKER.

1. Where plaintiff in ejectment claimed title to land under a sale made by a commissioner appointed by decree of a court of equity, and the defendant by virtue of a deed from a defendant in the equity case, the record of the proceedings in equity was admissible both to show the origin and foundation upon which the chancellor exercised jurisdiction and granted the decree, and also to show that the purchaser bought *pendente* title.

2. If a purchaser buys property directly condemned to sale for a particular debt in a court of common law, and practically the same parties as those to the common law suit carry the property into a court of equity, and there, by decree, sell it, instead of selling under the common law judgment, one who purchases *pendente lite* is as much affected by that sale as if it had taken place under the common law judgment.

3. A court of equity has full power to mould its decrees as to sales so as to meet the exigencies of each case.

(a) Whether a sale by a commissioner in equity requires confirmation or not depends on whether the decree ordering it is interlocutory or final. In this case it was final.

Evidence. Equity. Title. Notice. *Lis pendens.* Before Judge CRISP. Sumter Superior Court. April Term, 1880.

Reported in the decision.

HINTON & MATHEWS; J. A. ANSLEY, for plaintiff in error.

B. P. HOLLIS, for defendant.

CRAWFORD, Justice.

Coker, the defendant in error and plaintiff below, brought his action of ejectment to recover one hundred acres of land in the possession of Smith, which he claimed under a deed made by a commissioner in equity. Upon the trial, to support this title, he offered in evidence the mortgage out of which sprang the equity suit, the judgment absolute on the mortgage, the claim interposed by the wife of the mortgagor and a defendant in the bill, the bill itself and the decree thereon, all of which were admitted over the objection of counsel for Smith, the defendant below, and that ruling is assigned for error.

Notwithstanding there are numerous errors assigned, the whole of them turn upon the relevancy and legal effect of the above testimony.

Worrill bought this, with other lands, from one Parker, who gave him a deed and took from him a mortgage to secure the payment of the purchase money. This mortgage was transferred by Parker to Coker. At April term, 1866, a rule *nisi* was granted, and judgment absolute October term, 1871. On December 19th, 1871 the land was levied upon, and on January 1st, 1872, an agreement was entered into between Coker and Worrill, giving him further time of payment in certain instalments specified and agreed upon, but which were not to affect the mortgage *fi. fa.* in any way, as that was still to remain open and unsatisfied.

In October, 1872, Worrill, to pay Smith a debt which he owed him, sold him the land now in dispute. Worrill failed to pay Coker the money as promised and he advertised the lands for sale, Mrs. Worrill interposed her claim thereto, pending which Coker filed his bill in equity against Worrill and his wife, praying an injunction against waste and mismanagement of the lands, and for a receiver to take charge of the rents, issues and profits, subject to final decree.

At October term, 1878, a decree was had directing the receiver as a commissioner in equity to sell all the land and convey by deèd the same to the purchaser, which was done, and it is under this deed that Coker claimed title and the right of possession.

Smith, the defendant in the ejectment suit, having taken a deed to this land in payment of a debt due him from Worrill before the sale of it by the commissioner, claims to have the superior title and refuses to surrender the possession.

1. These being the facts relied upon by Coker, were they not pertinent to the issue, and was not the testimony admissible? It seems clearly so to us, in order to show the origin and foundation upon which the chancellor exercised his jurisdiction over the persons and the subject matter involved in the equity case, thereby clothing him with power and authority to make the final decree. The testimony was relevant also to show that this identical land was in the litigation between Worrill and Coker when Smith bought it.

2. It being then properly admitted, what was its legal effect upon the rights of these parties? There was a judgment absolute condemning this identical land to sale for the payment of this specific debt; there had been a seizure of the same by the sheriff, and pending this levy, Smith accepts a deed to this land in payment of a debt due him from Worrill. His title was therefore subject not only to this fixed lien upon the land, but to such further litigation as might arise out of it between these same parties. It had been in litigation before he bought it, the sheriff had levied upon it for sale; that the sale was suspended did not discharge it from the custody of the law; it was still *subject* to such further litigation as might arise out of it between the parties, and whilst in this legal status he bought it. It did become involved in further litigation arising out of the same cause of action and between practically the same parties, and a court of equity,

upon sufficient allegations took jurisdiction and control of the property itself, and by final decree ordered it sold for the payment of the same judgment lien resting upon it at the date of Smith's purchase. So that the question is, if a purchaser buy property directly condemned to sale for a particular debt in a court of common law, and practically the same parties to the common law-suit, carry that property into a court of equity, and there, by decree, sell it, instead of selling under the common law judgment, is not such purchaser as much affected by that sale as if sold under the common law judgment? We see no reason why he should not be, and if that be so, then the purchaser under the decree gets the superior title.

3. It is insisted in this case that the sale by the commissioner is objectionable, first, because it was a private sale, and second, because it has never been confirmed by the chancellor. To the first objection, we say that a court of equity has full power to mould its decrees so as to meet the exigencies of each case. Code, §4213. To the second, that confirmation may or may not be necessary, as the decree itself shall be interlocutory or final, and in this case it was final.

Judgment affirmed.